IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICKILYNN GARDNER, § | |
| *Plaintiff,* § | |
| § | Civil Case No. 4:23-cv-01712 |
| v. § | JURY |
| § | |
| AROMA360, LLC § | |
| d/b/a HOTELCOLLECTION.COM, § | |
| *Defendant.* § | |

**PLAINTIFF, RICKILYNN GARDNER'S, FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff, RickiLynn Gardner, files this First Amended Complaint against Defendant, Aroma360, LLC d/b/a HotelCollection.com, and in support thereof, respectfully shows the following:

## I.
## PARTIES

1. Plaintiff, RickiLynn Gardner ("Plaintiff"), is an individual who resides in Harris County, Texas.

2. Defendant, Aroma360, LLC d/b/a HotelCollection.com ("Defendant"), is a foreign limited liability company organized under the laws of the State of Florida with its principal office located in the State of Florida. Defendant is doing business in the State of Texas as an online retailer of scented candles and other home accessories. Defendant may be served with process by serving its attorney of record, Christopher Dodson, White & Case, LLP, 609 Main Street, Suite 2900, Houston, Texas 77002.

## II.
## JURISDICTION

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332. The amount of controversy in this action exceeds $75,000, exclusive of interest and costs. The parties to this lawsuit are citizens of different states and there is complete diversity.

4. The Court has personal jurisdiction over Plaintiff because she resides in Harris County, Texas, which is within the Court's jurisdiction. The Court has personal jurisdiction over Defendant because Defendant purposely availed itself to the State of Texas and exercised continuous and systematic contact with the State of Texas so that the long-arm statute of Texas allows the exercise of personal jurisdiction over Defendant[1] and personal jurisdiction is consistent with due process under the United States Constitution.[2]

## III.
## VENUE

5. Venue is proper in the Southern District of Texas because all of the substantial events giving rise to this Complaint occurred in Harris County, Texas.[3]

## IV.
## FACTS

**The Purchase of the Candle**

6. On or about November 25, 2022, Plaintiff purchased a three-wick scented candle from Defendant as part of a subscription service. The candle was named Deluxe Midnight in Paris Cande – White (the "Candle").

---

[1] *See, e.g., Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 249 (5th Cir. 2019).

[2] *Jester v. RS Diving Contractor GmbH*, No. H-21-476, 2021 U.S. Dist. LEXIS 165403, at *10-11 (S.D. Tex. 2021) (citing *Mullins v. Test America, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

[3] 28 U.S.C.§ 1391(b)(2).

7. Below is an image of the Candle model taken from Defendant's website.



Deluxe Midnight in Paris Candle - White x 1     $149.95

8. Plaintiff paid $149.95 for the Candle plus applicable tax.

9. Defendant shipped the Candle to Plaintiff's residence. Plaintiff received the Candle on November 22, 2022.

10. Below is an image of the confirmation email showing Defendant's shipment of the Candle to Plaintiff.

From: **Hotel Collection** <contact@hotelcollection.com>
Date  Tue, Nov 22, 2022, 1 58 PM
Subject: A shipment from order HC229815 has been delivered
To    rickilynngardner78@gmail com

Hi RickiLynn, your shipment has been been delivered for Order HC229815

**The Candle Arrives**

11. The Candle arrived at Plaintiff's home in a cardboard box with no instructions or warnings on the outside.

12. Likewise, there were no instructions or warnings inside of the box.

13. The only warnings on the Candle are very inconspicuous and are on a small label at the bottom of the Candle in tiny print.

14. Nowhere on the Candle's label does it state not to pick up the Candle or not to attempt to extinguish the candle flame with water.

**The Candle Malfunctions**

15. On November 25, 2022, Plaintiff attempted to light the Candle for the first time. Within seconds of her lighting it, the Candle began emitting a large, terrifying flame, shown below.



16. Plaintiff was extremely worried about the flame and the damage it might cause to her home.

17. The Candle did not come with a lid.

18. Thinking quickly, Plaintiff attempted to put the flame out with water. However, this only caused the flame to flare up like an explosion.

19. Presumably, a dangerous chemical inside of the candle wax reacted to the water and caused the flame to intensify in a horrific and extremely dangerous way.

20. Below is an image of the initial flare-up captured by Plaintiff's home surveillance system.



21. Upon information and belief, the glass of the Candle was unable to endure the extreme heat of the large flame, compromising the structural integrity of the Candle.

**The Candle Injures Plaintiff**

22. After the flame returned to its pre-flare state, Plaintiff reasonably concluded that she needed to move the Candle to a safer location while she figured out how to safely extinguish the large flame.

23. She decided to move the Candle to her metal kitchen sink directly behind her, where the threat of fire could be mitigated.

24. Plaintiff touched the Candle midway down and the glass was cool to the touch. She then picked up the Candle carefully and kept it level, as show in the following image.



25. As she did, the glass suddenly cracked, the wax came spilling out, and Plaintiff's hands were engulfed in a blazing inferno and coated with hot melted wax.



**Defendant knew the Candle was Unreasonably Dangerous**

26. The Candle was unreasonably dangerous, even when using it exactly as intended. Plaintiff complied with the few warnings on the small bottom label. There were no warnings instructing against any action she took. Plaintiff did not alter the Candle in any way.

27. Defendant had knowledge of the dangerous nature of these candles yet continued to sell them without warning of the dangerous defects.

28. The following are statements taken from online reviews of other customers who have had issues similar to the one that injured Plaintiff from other candles of the same product line:



 





 Cali Howell doesn't recommend Hotel Collection.
August 6

BUYER BEWARE! I purchased the Black Velvet candle for the first time less than a month ago. I love the scent! However, after burning it for 4 hours, it literally caught on fire tonight! It looked like a bonfire on my kitchen countertop. Thank God I caught it in time! This should NEVER HAPPEN. I usually buy Bath and Body Works candles and have burned them for 8 hours or more without issue. The glass was shattered in giant shards. This is an absolute liability. Someone needs to contact me to provide a resolution. I'm not paying for an expensive candle for it to set fire to my house. Your customers need to know the risk this candle poses.



 **Brittney Overstreet** doesn't recommend **Hotel Collection**.
July 17

My candle almost set my house on fire! It smells great however, this tiny candle put up a MASSIVE flame. When I tried to blow it out the flame got bigger, when I pulled it closer to me the candle cracked in half. I ended up having to smother it with a tumbler to put the candle out. Really bummed because they smells really good.

👍😮😢 5            9 comments

👍 Like     💬 Comment     ↗ Share

View 3 previous comments      Most relevant ▼

 **Jerry Ascione**
DONT BUY THIS PIECE OF TRASH. HAD MINE FOR 8 MONTHS AND IT STOPPED WORKING. THE COMPANY WANTS YOU TO BUY ANOTHER ONE RATHER THAN FIX A MANUFACTURER DEFECT. ALONG WITH THEIR OVERPRICED OIL

Like   Reply   12w

 **LadiiBell**

★★☆☆☆ Wouldn't recommend! . Fire 🔥 hazard.
Reviewed in the United States us on June 8, 2022
Scent: 24K Magic | Size: Black 11oz | **Verified Purchase**

This candle I bought because of an Instagram ad. However the candles doesn't give off a full sent. You can barely smell it. The wick flames are extremely high. The glass was so hot that it broke the glass mirror in which I placed for accents. I wouldn't recommend this candle. The price was extremely high for all the problems it caused.



 **Craig Brzezinski**
I won't use since they don't stand behind their product. My candle cracked while burning and they won't do anything about it. Terrible.



Like   Reply   47w           

**Plaintiff's Injuries**

29. As a result of the defective product, Plaintiff sustained serious injuries to her hands. Her left hand sustained particularly severe burns.

*Left Hand*  *Right hand*




30. In addition to Plaintiff's physical pain and suffering, she has experienced significant mental anguish from the incident and her injuries. She has post-traumatic stress disorder which causes her depression and anxiety. She has lost the ability to engage in many activities she used to enjoy, including certain activities with her daughter (all the more harmful since she's a working single mother).

31. The disfigurement and impairment have detrimentally impacted her career in cosmetic surgery sales. She is at risk of losing her job.

32. The continued pain itself imposes significant mental anguish.

# V.
# CAUSES OF ACTION

## A. PRODUCTS LIABILITY

### Design Defect

33. Plaintiff incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

34. The Candle was unreasonably dangerous, even with its intended and reasonably foreseeable use.

35. The wax for the Candle is dangerously flammable and combustible.

36. The glass holding the candle is brittle or fragile and cannot withstand the heat of the normal and intended use of the candle, rendering it defective.

37. The propensity of the glass to break and the wax to cause hazardous inferno made the design of the Candle unreasonably dangerous to an ordinary and prudent user, including Plaintiff.

38. The defective condition of the Candle could have been fixed using technology available to Defendant at the time of the manufacture and sale of the Candle.

39. There was a safer alternative design for the Candle that would have prevented or significantly reduced the risk of injury, which was economically and technologically feasible by Defendant by the time the Candle left Defendant's control.

40. Despite knowledge of the defective design of the Candle, Defendant took no steps to remedy the defects or to warn of its dangerous propensities.

41. Accordingly, the Candle was defectively designed, and the design defect was a proximate cause of Plaintiff's injuries and damages.

### Marketing Defect and Failure to Warn

42. Plaintiff incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

43. Neither the Candle nor its packaging contained any instructions or warnings that the flame could burn in the dangerous manner that it did, that the glass could break with ordinary use, that the wax was volatile and dangerously combustible, that the Candle could not be extinguished by water, or that the Candle could fall apart and cause a fire if picked up while lit.

44. Defendant failed to give adequate instructions and warnings of the Candle's defects that were known, or by the application of reasonably developed human skill and foresight should have been known, by Defendant.

45. Defendant placed the Candle into the stream of commerce without proper instructions, notices, or warnings concerning the defective conditions of the Candle.

46. Defendant's failures rendered the Candle unreasonably dangerous as marketed, and the defective marketing was a proximate cause of Plaintiff's injuries and damages.

### Manufacturing Defect

47. Plaintiff incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

48. Upon information and belief, the Candle was manufactured defectively by Defendant.

49. The glass of the Candle was defective in that it cracked under the temperature of the flames generated by the Candle, leading to hot wax coating Plaintiff's hand and flaming up.

50. The wax mixture was defective in that it was overly-flammable and caused a large and dangerous fire, even when being used exactly as intended and in a reasonably foreseeable way.

51. Defendant's manufacturing failures rendered the Candle unreasonably dangerous, and the defective manufacturing was a proximate cause of Plaintiff's injuries and damages.

52. Defendant is strictly liable to Plaintiff for the damages she sustained from the defective product.

### B. NEGLIGENCE

53. Plaintiff incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

54. Defendant had a duty to Plaintiff to act as a reasonable retailer would in the same or similar situation. Defendant breached that duty by manufacturing, marketing, and selling the defective Candle to Plaintiff despite knowing that the Candle was defective. A reasonable retailer, prudent retailer would not have sold or marketed the Candle as is but would have corrected the defects in design, manufacturing, and marketing so as to alleviate the known dangers presented by the Candle.

55. Defendant's breach of duty was a proximate cause of Plaintiff's injuries and damages.

### C. GROSS NEGLIGENCE

56. Plaintiff incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

57. The conduct of Defendant constituted gross negligence as that term is understood in law, and such conduct was a proximate cause of the occurrence made the basis of this suit and of Plaintiff's injuries and damages.

58. Defendant had actual knowledge that its product line, which included the Candle, was causing dangerous fire hazards. In particular, Defendant knew of numerous reports that its

products were burning out of control, that the glass was breaking spilling wax and flames, and that the products were causing the same kind of occurrences as that which injured Plaintiff.

59. Despite this knowledge, Defendant proceeded to market and sell the Candle with conscious disregard for the safety and rights of others, including Plaintiff.

60. To this day, despite actual knowledge of the many occurrences of fire hazards, as well as the injuries to Plaintiff, Defendant continues to defectively market and sell the product line of dangerous candles.

61. Defendant's actions arise to the level of gross negligence, entitling Plaintiff to recover exemplary damages for Defendant's grossly negligent conduct and as a deterrent against future bad acts.

## VI.
## DAMAGES

62. As a direct and proximate result of Defendant's negligent, reckless, and wonton actions, Plaintiff suffered serious injuries. Accordingly, Plaintiff brings suit for the following damages:

   a. Past and future medical expenses;

   b. Past and future physical pain;

   c. Past and future mental anguish;

   d. Past and future physical impairment;

   e. Past and future physical disfigurement;

   f. Exemplary damages;

   g. Pre- and post-judgment interest;

   h. Costs of court; and

   i. Any and all damages to which Plaintiff may be justly entitled under the law.

## VII.
## INTEREST

63. Plaintiff seeks pre-judgment and post-judgment interest as authorized by law. Plaintiff also claims damages in the amount of the legal interest as allowed by law on all pecuniary and non-pecuniary damages as found by the jury at the maximum legal rate allowed by law: (a) accruing from a date beginning 180 days after the date Defendant received written notice of this claim or on the date of filing suit, whichever occurred first, until the time judgment against Defendant is rendered; and (b) after judgment until the same is paid.

## VIII.
## PRESERVATION OF EVIDENCE

64. Plaintiff hereby requests and demands that Defendant and its agents, attorneys, and insurers preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, and the resulting damages, including but not limited to videos, photographs, audiotapes, recordings, correspondence, memoranda, files, facsimiles, email, voicemail, text messages, or cellular phone records. Failure to maintain such items will constitute "spoliation" of the evidence and may subject Defendant to sanctions, and the Court will provide the jury an instruction thereon at the trial of this case.

## IX.
## JURY DEMAND

65. Plaintiff respectfully requests trial by jury.

## X.
## PRAYER & RELIEF REQUESTED

66. For the reasons stated herein, Plaintiff, RickiLynn Gardner, respectfully requests that Defendant, Aroma360, LLC d/b/a HotelCollection.com, be cited according to law to appear herein, and that upon final trial, Plaintiff have judgment against Defendant for those damages

described in the foregoing and in the full amount by law, together with pre-judgment interest and post-judgment interest at the legal rate and for costs of court, and for such other further relief to which Plaintiff may be justly entitled.

Dated: July 18, 2023

Respectfully submitted,

*/s/ R. Turner Johnston*
Randall O. Sorrels
Texas Bar No. 10000000
Federal ID No. 11115
R. Turner Johnston
Texas Bar No. 24110058
Federal ID No. 3322749
5300 Memorial Drive, Suite 270
Houston, Texas 77007
(713) 496-1100 – Main
(713) 751-2394 – Facsimile
randy@sorrelslaw.com
turner@sorrelslaw.com
**E-service: eservice@sorrelslaw.com**

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on the 18th day of July, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the CM/ECF electronic case filing system of the court and/or served the foregoing document by another method authorized by Federal Rule of Civil Procedure 5(b).

*/s/ R. Turner Johnston*
R. Turner Johnston